UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JACOB DANIEL LICKERS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 16-cr-40011 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER AND OPINION

**SARA DARROW, Chief U.S. District Judge:**

Now before the Court is Petitioner Jacob Daniel Lickers's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (d/e 62). Lickers was initially charged in state court and successfully moved to suppress the evidence against him. During his federal criminal proceedings, Lickers again moved to suppress the evidence against him but his motion was denied, and the denial was affirmed on appeal. Now, he argues that his counsel was ineffective for failing to argue an additional ground for suppression of the evidence. For the reasons below, the Court DENIES Lickers's Motion to Request Counsel (d/e 63), DENIES Lickers's § 2255 motion (d/e 62), and DECLINES to issue a certificate of appealability. Lickers's Motion for Extension of Time to File a § 2255 Motion (d/e 61) is DISMISSED AS MOOT.

## I. BACKGROUND

Lickers was in his vehicle at a public park when two undercover officers unexpectedly encountered him, approached the vehicle, and began asking questions. Ultimately, this encounter led to Lickers's convictions for transportation of child pornography, in violation of 18

U.S.C. §§ 2252A(a)(1), (b)(1), and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2). *See* Judgment, d/e 46. He is currently serving a sentence of 132 months imprisonment. *Id.* Lickers argues, however, that had counsel been effective, he would have succeeded on his motion to suppress and had the indictment dismissed.

### A. Offense Conduct

The Seventh Circuit's opinion on direct appeal fully summarized the law enforcement encounter that led to Licker's criminal proceedings:

> On the afternoon of September 3, 2015, Jacob Lickers sat alone in his car, parked in the grass under a group of trees in Monmouth Park. Two undercover police officers dressed in civilian clothes, in the park to meet a confidential drug source, noticed Lickers and found his behavior odd. He appeared excited, repeatedly looking toward the passenger seat, down at his lap, and then at a family with young children on a nearby playground. On their second and third rounds through the park, the officers again passed Lickers and observed the same behavior. On their final pass they called dispatch to run the car's Colorado license plate.
>
> The officers parked and continued to watch Lickers, at one point thinking that he may be a drug user because his movements reflected the tweaking commonly exhibited by someone craving methamphetamine. The officers decided to approach Lickers's car and start a conversation, including by offering to sell drugs. Upon doing so, Inspector Jimmy McVey saw that Lickers had a small towel covering his lap, which he kept putting his hands under, and a cellphone on the passenger seat. At that point, the second officer, Inspector Ryan Maricle, addressed Lickers by his first name, to which Lickers responded by asking if the two men were police officers. The officers so confirmed and displayed their badges.
>
> Lickers's demeanor then changed. He became noticeably nervous, began breathing heavily, and sought to knock his cellphone off the seat to the floor of the car. He also kept placing his hands under the towel on his lap. Inspector McVey reacted by asking Lickers for his driver's license, which Lickers provided. McVey then radioed Lickers's information to dispatch and asked for a patrol car to come to the park.
>
> Over the next minute or so, and despite the officers' repeated requests to keep his hands visible and out in the open, Lickers continued placing his hands under the towel on his lap. Concerned that Lickers may be concealing a weapon, Inspector Maricle directed him to remove the towel. Lickers did so, exposing his genitals. When Inspector McVey asked Lickers what he was doing, Lickers said he was

> looking at the website Craigslist on his phone and "self-pleasuring himself." He then immediately changed course, however, and insisted that he was urinating in a cup, despite the presence of a nearby public restroom.
>
> Skeptical of the new explanation, Inspector McVey asked Lickers if he was viewing pornography on his phone while watching the family with children on the playground. Lickers had no response. At that point, McVey ordered Lickers to pull up his pants and step out of the car. The moment Lickers opened the car door, Inspector McVey smelled marijuana. When Lickers denied McVey's request to search the car, the police radioed for a K9 unit to come to the park. The unit arrived about 20 to 30 minutes later, and a dog circled the car and alerted near the passenger door, at which point Lickers admitted he had marijuana inside. The officers then found the marijuana and placed Lickers under arrest for drug possession. A subsequent, more thorough inventory search of the car resulted in the officers recovering Lickers's cell phone, laptop computer, and digital camera.
>
> Later the same day a state court judge approved a warrant authorizing a search of these devices. The search revealed sexually explicit videos of young children on Lickers's phone.

*United States v. Lickers*, 928 F.3d 609, 614 (7th Cir.), *cert. denied,* 140 S. Ct. 410 (2019).

### B.  State Court Proceedings

Lickers was subsequently indicted in state court on drug and child pornography charges. Lickers's attorney, Daniel Dalton, moved to suppress the evidence resulting from the police's initial detention of him in the park, the search of the car with the help of the K9 unit, and the evidence recovered from his phone.  *See* Motion to Suppress, Ex. B, State Court Opinion and Order (d/e 17-2).  On January 22, 2016, the state court granted the motion, concluding that the police "lacked sufficient justification to remove the defendant from his automobile" and lacked probable cause or reasonable suspicion to detain him for 20 to 30 minutes while waiting for the k9 unit to arrive.  *Id.*  Therefore, the state court ordered suppressed "all physical evidence seized and statements of the defendant made after the arrival of the uniform[ed] officers [in the park]." *Id.*  The state charges against Lickers were later dismissed.

### C. Federal Investigation and District Court Proceedings

About three weeks later, federal authorities began their investigation. The FBI sought a warrant to search Lickers's phone and laptop and presented an affidavit to the district court on February 17, 2021. Pet. Motion, Ex. C, Federal Search Warrant Affidavit (d/e 62 at p.45). The affidavit included a copy of the state search warrant application and disclosed that the search conducted by state authorities had revealed child pornography on Lickers's phone. Notably, the FBI's warrant application did not mention that the state court had granted a motion to suppress this evidence. The Court issued the warrant, and the FBI's ensuing search of Lickers's phone found pornographic images and videos of very young children, including one video of a girl not even a year old. Two days after seeking the warrant, on February 19, 2016, a federal criminal complaint was filed against Lickers. *See* d/e 1. In the complaint affidavit, the same FBI agent who sought the warrant noted that the state charges against Lickers would likely be dismissed due to the state court's prior suppression ruling. *Id*.

After being indicted, Lickers, still represented by Mr. Dalton, filed a motion seeking suppression of the evidence that formed the basis of his federal charges. *See* d/e 17. As he had successfully argued in state court, Lickers argued that his initial detention was unlawful and the subsequent warrantless search of his vehicle violated the Fourth Amendment. *Id.* He also argued that the later search of his phone and laptop computer, even though pursuant to a state warrant, was illegal because it lacked probable cause. *Id.* He argued that the good faith exception from *United States v. Leon*, 468 U.S. 897 (1984), did not save the warrant because the issuing judge wholly abandoned his neutral and detached judicial role and the supporting affidavit was so lacking in probable cause that officer reliance on the warrant was unreasonable.

*Id.* at 3.  His motion did not address any deficiencies specific to the federal warrant or the good faith of the FBI agent in seeking and relying on the federal warrant.

After an evidentiary hearing, the Court found that the initial detention and warrantless search of the vehicle did not violate the Fourth Amendment.  Tr. 117 (d/e 54).  The Court also found that the state search warrant contained sufficient probable cause and that the judge issuing it did not stray from his neutral and detached role.  Tr. 118.

Shortly after the suppression hearing, Mr. Dalton, filed a motion to withdraw as Lickers's attorney.  *See* d/e 20, 21; September 7, 2016 Text Order.  New counsel was appointed and Lickers pled guilty at a change of plea hearing on February 7, 2017.  No written plea agreement was filed, but Lickers agreed to plea guilty to the charges while reserving his right to appeal the Court's order denying his motion to suppress.  *See* d/e 25.

About one year later, on February 6, 2018, Lickers filed a motion to withdraw his guilty.  *See* d/e 35, 40, 41.  After a hearing on February 27, 2018, the Court found that Lickers did not truly want to withdraw his guilty plea.  Rather, he wanted to "have another bite at the suppression apple."  Mot. Tr. 20 (d/e 52).  The Court found that Lickers's concern was that he "wanted a more specific challenge or a challenge at all to the search of the phone.  And he's claiming, I think, that his attorney was ineffective at the time of the suppression hearing."  Mot. Tr. 30-32.  However, the Court found there was nothing on the record to make a finding that Mr. Dalton was ineffective during the suppression hearing in failing to make a more pointed challenge regarding the phone itself.  *Id.*  Accordingly, the Court denied the motion.  *Id.*

The Court sentenced Lickers on May 25, 2018, to a below guidelines sentence of 132 months' imprisonment and a lifetime term of supervised release.  *See* Judgment, d/e 46.

### D. Direct Appeal

Lickers promptly appealed, challenging the Court's denial of his motion to suppress and his lifetime supervised release order. His attorney on appeal was Mark Rosen. The Seventh Circuit affirmed the conviction and sentence. *See United States v. Lickers*, 928 F.3d 609 (7th Cir. 2019). The Seventh Circuit found that the initial detention was constitutional because Lickers's odd behavior created the necessary reasonable suspicion to order him out of his car and that there had been no Fourth Amendment seizure prior to that point. *Id.* at 615-16. Further, upon smelling marijuana emanating from his car, officers had probable cause to call the K9 unit to the park and search his car. *Id.* at 616. Finally, the Seventh Circuit held that after finding marijuana in his car, the Fourth Amendment allowed the subsequent inventory search of the vehicle that recovered Lickers's phone and laptop computer. *Id.* at 617.

However, the Seventh Circuit found that the state search warrant did not contain sufficient probable cause to search the phone because it did not explain "what it was about Lickers's behavior in the park combined with law enforcement's experience investigating child pornography offenses that made it probable, and not just possible, that Lickers's phone contained child pornography." *Id.* at 618. The federal search warrant, which absent its reliance on the child pornography found as a result of state search warrant relied on the same facts, failed for the same reason: "We cannot conclude that what remains in the federal affidavit supplied enough facts to create a fair probability that the FBI would find child pornography on Lickers's phone. Maybe, but maybe is not probably, and that is where the federal warrant was lacking." *Id.*

Turning to the question of good faith, the Seventh Circuit noted that "[o]vercoming the presumption of good faith is no small feat as an officer cannot ordinarily be expected to question a judge's probable cause determination" and that the doctrine had only been found not to apply

in one occasion in recent years. *Id.* at 619. Importantly for the present motion, the Seventh Circuit found that the conduct of the FBI agent should have been considered instead of solely the conduct of the state law enforcement officers:

> Neither Lickers nor the government devote a word to the conduct of the FBI agent who obtained and executed the federal warrant. But that is where we conclude the focus should be given the combination of two factors. First, the federal search yielded the evidence that resulted in the federal prosecution and conviction Lickers now challenges on appeal. Second, nothing about the prior state proceedings, although they resulted in the dismissal of charges on the basis of the state court's ruling regarding the police's initial detention of Lickers in the park, raised questions for the federal agents about the integrity of the state search warrant application that could somehow have infected the subsequent federal application.
>
> To be sure, the record leaves unanswered how much the FBI agent knew about the state court prosecution. The agent's attaching the state court warrant application to the federal application shows he at least knew there was a state investigation. But what we cannot tell, and what Lickers has failed to offer any evidence of, is whether the agent knew that a state court prosecution followed and resulted in the suppression of evidence, including the child pornography found on Lickers's phone, and dismissal of charges. We pause on this point to underscore that, had the FBI agent possessed this knowledge, it may have been relevant to the good faith determination, and the better practice would have been to include the information in the federal application. A state court's suppression ruling may inform a federal court's subsequent assessment of a federal warrant application.

*Lickers*, 928 F.3d at 619.

Despite noting the unanswered questions in the record, the Seventh Circuit was left with a "firm mind that the process that resulted in the application for, and execution of, the federal search warrant reflected good faith on the part of the federal agents." *Id.* While the warrant relied on evidence that had been suppressed by the state court, nothing suggested that "the federal application process reflected bad faith or, more specifically, any awareness by the FBI agents who sought or executed the warrant that it was lacking in any dimension or reflected the district judge abandoning her neutral role." *Id.*

**E. Lickers's § 2255 Motion**

Lickers filed this Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (d/e 62) on July 24, 2020. He argues that his counsel was ineffective during the suppression hearing for failing to raise the issue noted by the Seventh Circuit: whether the FBI agent knew about the state court suppression ruling at the time of seeking the federal warrant and whether this knowledge would have made his reliance on the search warrant not in good faith. He argues his appellate counsel also should have raised this issue, and/or sought to have the case remanded to the district court for purposes of questioning the FBI agent regarding his knowledge of the state court proceedings when he applied for the federal search warrant. Lickers has also filed a motion requesting counsel (d/e 63). The Government filed a response in opposition (d/e 69), which included affidavits from Lickers' trial counsel, Mr. Dalton (d/e 69-1) and Lickers' appellate counsel, Mr. Rosen (d/e 69-2). Lickers has filed a reply (d/e 72). This Order now follows.

## II. LEGAL STANDARD

Section 2255, "the federal prisoner's substitute for habeas corpus," *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), permits a prisoner incarcerated pursuant to an Act of Congress to request that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quotation marks omitted).

### III. DISCUSSION

Lickers's § 2255 motion is another attempt to litigate his suppression claims, this time arguing that he received ineffective assistance of counsel when counsel failed to present the argument later highlighted by the Seventh Circuit. The Seventh Circuit held that the search warrants in Lickers's case lacked probable cause, but were saved by the good faith doctrine under *United States v. Leon,* 468 U.S. 897 (1984). Pursuant to *Leon*, the Fourth Amendment's exclusionary rule does not apply to evidence obtained by law enforcement officers acting in reliance on a search warrant issued by a detached and neutral magistrate: "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination." *United States v. Harju*, 466 F.3d 602, 606 (7th Cir. 2006) (internal citations omitted). A police officer's decision to obtain a warrant is *prima facie* evidence that he was acting in good faith, and a defendant bears the burden of rebutting that presumption. *Id.* at 607; *accord, United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007). A defendant can rebut this presumption "only by showing that the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). Lickers argues that his attorneys could have showed the good faith doctrine did not apply to the federal warrant because the FBI agent failed to include in the warrant affidavit the details of the state suppression ruling.

The Government, however, argues that the claims are procedurally barred because they were already raised and addressed on direct appeal. Alternatively, the Government argues that

Licker's claim fails on the merits. The Court agrees with both arguments and finds that motion must be denied.

### A. Licker's Claim is Procedurally Barred.

Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995). Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710-20 (7th Cir. 1994). "[I]t is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually. . . involve evidence outside the record." *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002).

Here, Lickers's claims of ineffective assistance of counsel stem from the Seventh Circuit's observation that neither Lickers's counsel nor the Government focused on the conduct of the FBI agent in applying for the federal warrant. Nonetheless, the Seventh Circuit's opinion *did* focus on the FBI agent's conduct and found that the agent had acted in good faith in relying on the warrant. Specifically, even though the record did not reveal whether the FBI agent knew about the state suppression hearing ruling, the Seventh Circuit found that good faith was evident because "the [FBI] agent took care to seek a new warrant to authorize a new, federal examination

of Lickers's phone, computer, and digital camera." *Id.* Ultimately, the Seventh Circuit stated that its review of the record left them "of firm mind that the process that resulted in the application for, and execution of, the federal search warrant reflected good faith on the part of the federal agents . . . ." *Id*. at 620.

Accordingly, the Seventh Circuit has already determined that the FBI agent acted in good faith regardless of his knowledge of the state suppression proceedings at the time of applying for the search warrant. Lickers's attempts to relitigate the issue here in the guise of an ineffective assistance of counsel is procedurally barred.

### B. Lickers Has Not Shown Ineffective Assistance of Counsel.

Even if the Seventh Circuit decision had left open whether knowledge of the state suppression ruling could have altered the good faith determination, the Court finds that Lickers has not shown he received ineffective assistance of counsel when his counsel did not present the issue. The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland's* two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690. A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991).

Here, Lickers cannot show that he received ineffective assistance of counsel when his counsel failed to raise this issue. Looking just at the record of the criminal proceedings, it could be possible that counsel simply proceeded with the same arguments he had made in state court without considering whether additional grounds could be raised regarding the federal search warrant. This might have helped Lickers show the first prong: deficient conduct. However, Mr. Dalton has submitted an affidavit stating that he did not raise the issue because he did not consider the omission to be material for two reasons: the state court had not considered whether the state warrant lacked probable cause and such a determination would not have been binding on the district court. *See* Affidavit of Daniel Dalton, d/e 69-1.

The Court agrees with Attorney Dalton's assessment, and, for the same reason, finds that Lickers cannot show prejudice. Even if the FBI agent knew about the state suppression hearing (and even if the Seventh Circuit's decision left this issue unanswered), the Court finds that the FBI agent acted in good faith in relying on the federal warrant. As Lickers's defense counsel noted, the state suppression ruling did not address the validity of the warrant itself. Rather, the state court found that law enforcement lacked probable cause or reasonable suspicion to detain Lickers. Based on that finding, the state court suppressed all evidence from the encounter. The FBI agent's inclusion of the state suppression ruling surely would have been the better practice, as the Seventh Circuit noted. However, because the state court did not address whether the search warrant had sufficient probable cause, the FBI agent would not have had any reason to believe the warrant application itself was lacking probable cause. And, while including the state suppression ruling might have made the Court aware of later issues likely to come up in the case, the state suppression ruling was not binding on the Court. At the warrant stage, the Court must

only determine whether the warrant itself had sufficient probable cause. Inclusion of the state court suppression ruling would not have impacted that calculus in this case.

Importantly, it is not clear that the Court would have been required to suppress the evidence obtained from the warrants even if the Court had found that the initial encounter violated the constitution because the caselaw in this circuit is unsettled regarding whether the fruit of the poisonous tree would have even resulted in suppression of the evidence in this case had the district court or the Seventh Circuit agreed with the state court's finding that the detention was unconstitutional. *See Lickers*, 928 F.3d at 620 (leaving "for another day the question whether we are required to exclude all traces of that knowledge from our good-faith analysis under *Leon*, a question on which other circuits have offered differing views.") (citing *United States v. McClain*, 444 F.3d 556, 565–66 (6th Cir. 2005) (applying *Leon* good faith where an affidavit supporting a search warrant was tainted by evidence obtained in violation of the Fourth Amendment) with *United States v. Vasey*, 834 F.2d 782, 789 (9th Cir. 1987) (endorsing contrary reasoning and declining to apply the *Leon* good-faith exception)). Accordingly, the limited state suppression ruling had little to say about how the case would proceed in federal court. And, as the Seventh Circuit noted "there was nothing impermissible about the federal authorities choosing to seek the warrant as part of pursuing a federal prosecution of Lickers following the state court's suppression ruling and dismissal of the state charges." *Lickers*, 928 F.3d at 620.

In another case, the outcome might be different. If the state court had found that the search state warrant lacked probable cause, that reasoned decision could certainly be material to the FBI agent's good faith reliance on the warrant, even if it would not be binding on the federal district court. Here, however, even if the Seventh Circuit's decision left open whether the

omission was material, the Court now holds that, based on the facts of this case, the omission was immaterial.  Accordingly, Lickers cannot show prejudice on his trial counsel claim or his appellate counsel claim because raising this issue would not have changed the outcome of his suppression motion or appeal.

### C. Lickers's Motion for Counsel is Denied.

Lickers has also filed a motion to request counsel (d/e 63).  While parties seeking post-conviction relief under 28 U.S.C. § 2255 are not entitled to counsel, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), a court may appoint counsel for financially eligible § 2255 petitioners if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B).  Lickers has not provided any details on why he should be appointed counsel.  The Court notes that Lickers was well aware of the basis of his claim and advanced coherent arguments in support of his claim.  While his claim may not have been run-of-the-mill, his briefing shows that he has sufficient understanding of the law and the facts of this case.  Appointing counsel would not aid the Court in understanding Lickers's claims, nor otherwise be in the interests of justice.  Accordingly, the Court DENIES Lickers' motion.  *See Taylor v. Knight*, 223 F. Appx 503, 504 (7th Cir. 2007) (finding that "[t]he district court acted well within its discretion in denying [the petitioner's] request for appointed counsel" pursuant to 18 U.S.C. § 3006A(a)(2)(B) where the petitioner's "claims were not particularly complex," he "had litigated many similar claims before," and he "appeared to be informed about the facts and proceedings, was able to express himself in an understandable fashion, and showed no particular impediment to his trying the case himself").

## IV. EVIDENTIARY HEARING

Lickers has requested an evidentiary hearing. An evidentiary hearing is not always necessary in § 2255 cases. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b). Here, no hearing is necessary because Lickers's claim is procedurally barred and because, even if it is not procedurally barred, he is unable to show prejudice on any of his claims and has not sufficiently alleged material facts that, if true, would entitle him to relief on his ineffective assistance of counsel claims.

## V. CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court does not find that reasonable jurists could disagree that Petitioner's claims are procedurally barred and/or meritless. Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner Lickers's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (d/e 62) and his Motion for Appointment of Counsel (d/e 63).  The Court DECLINES to issue a certificate of appealability.  Lickers's Motion for Extension of Time to File a § 2255 Motion (d/e 61) is DISMISSED AS MOOT.  The Clerk is DIRECTED and enter the Judgment in favor of Respondent and close the accompanying civil case, 20-cv-4164.  This case is CLOSED.


Signed on this 23rd day of December 2021.

/s/ Sara Darrow
Sara Darrow
Chief United States District Judge

**NOTICE**

Petitioner is informed that if he wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit. If Petitioner chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 60 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Petitioner files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Petitioner will only be allowed to proceed on his appeal if he obtains a certificate of appealability. Here, the undersigned District Judge has already declined to issue a certificate of appealability. Thus, Petitioner must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal. The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Petitioner cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal in forma pauperis ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Petitioner plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).

On the other hand, if Petitioner wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion

must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc*., 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Petitioner showing excusable neglect or good cause.